pound" or "rubber product", but upon whether it meets the objective standards of headnote 2.[12]

This brings us to the heart of the matter. Can this midsole material—the "substance" in crude form containing fillers—be cross-linked and, after cross-linking, be stretched at 68° F. to at least three times its original length and then, after having been stretched to twice its original length and the stress removed return within 5 minutes to less than 150 percent of its original length?

The midsole material can, of course, be cross-linked inasmuch as it is vulcanized. However, there is not a scintilla of evidence in the record that the midsole mixture or compound *in crude form* was incapable, after cross-linking, of meeting the specified stretch and return requirements. For the laboratory stretch test, by which the parties agreed to abide, was performed upon the *finished midsoles*. Reliance upon this test is totally insufficient inasmuch as the undisputed testimony established that the method of curing or vulcanizing can affect the elasticity of the compound. (R. 71) The record is silent regarding the process used here; indeed, we are left completely unaware as to what extent or how the particular curing process used here may have affected the compound's elastic capability. In the absence of stipulation or evidence linking the tests performed upon the finished product to the performance capability of the compound material in crude form, the stretchability of the *finished* midsole is irrelevant. For the finished midsole is not a substance in crude form to which the stretch and return tests of headnote 2 are applicable.

The basis of the classification here, which carries with it a presumption of correctness, is the classifying officer's finding that the midsole consists solely of "rubber" as defined in headnote 2. Plaintiff has failed to establish that the midsole is not "rubber" as that term is so defined.

In sum, plaintiff has failed to discharge its burden of proof; hence, its protest must be overruled and the classification affirmed. Judgment will be entered accordingly.

(C.D. 4376)

VOLKSWAGEN OF AMERICA, INC. *v.* UNITED STATES

---

[12] We cannot agree with plaintiff's contention that the midsole in question consists, in effect, of two substances: iron powder and rubber. For plaintiff has failed to establish that iron powder, in the quantity used in the midsoles, cannot be a filler or extender in a rubber compound, or that there is insufficient rubber polymer, by volume, to form the matrix for the iron powder. In fact, the evidence points to the contrary, namely, that the midsole, which contains at least 10 percent by weight or crude and synthetic rubbers, is a "rubber compound".

United States Customs Court, Third Division

(Decided September 14, 1972)

*Donohue & Shaw* (*Joseph F. Donohue* and *Aloysius P. Stedina* of counsel) for the plaintiff.

*E. Grey Lewis*, Acting Assistant Attorney General (*Andrew P. Vance* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of automobile trucks (Volkswagens) valued over $1,000 each which were imported at the port of New York in January, 1968 from West Germany. The trucks were classified in liquidation under item 945.69, TSUS, at the duty rate of 25 per centum ad valorem pursuant to Presidential Proclamation 3564 which withdrew certain previous duty concessions. The importer claims in its protest that the trucks are properly dutiable either under item 692.05, TSUS, at the duty rate of 8.5 *per centum ad valorem*, or under item 692.10, TSUS, at the duty rate of 6.5 *per centum ad valorem*. The latter claim was expressly abandoned by the importer under a stipulation entered into by the parties which submitted the instant controversy to the court for decision upon an agreed statement of facts and contentions of the plaintiff.

In the stipulation, the parties agree as follows:

1) The merchandise involved herein consists of Volkswagen automobile trucks valued over $1,000, which trucks were manufactured in and exported from West Germany after January 7, 1964, the effective date of Presidential Proclamation 3564, dated December 4, 1963. The automobile trucks were classified under Item 945.69 of the Tariff Schedules of the United States, which Item was added pursuant to Presidential Proclamation 3564, T.D. 56072, and assessed with duty at the rate of 25% *ad valorem*.

2) Under paragraph 369(a) of the Tariff Act of 1930, as originally enacted, automobile trucks valued at $1,000 or more were assessed with duty at the rate of 25% *ad valorem*. As a result of various trade agreements, proclaimed under the authority of Section 350 of the Tariff Act of 1930, as amended, the rate on such automobile trucks was reduced to 8.5% ad valorem. The 8.5% ad valorem rate for automobile trucks, in effect as of August 30,

1963, was carried forward in Item 692.05 of the Tariff Schedules of the United States, as proclaimed by Presidential Proclamation No. 3548, 28 F.R. 9279, pursuant to the Tariff Classification Act of 1962, Pub. Law 87–456, 76 Stat. 74, as amended.

3) Plaintiff contends that Proclamation 3564 is illegal, null, and void because the President, when he purported to terminate proclamations effectuating prior trade agreement concessions under authority of Section 252(c), Trade Expansion Act of 1962, exceeded his authority thereunder which permits him to "suspend, withdraw, or prevent the application of benefits of trade agreement concessions to products of such country of instrumentality." Plaintiff claims that the said presidential action is not otherwise authorized, and that said automobile trucks are properly dutiable at 8.5% *ad valorem* under Item 692.05 (superseded by Item 692.02, per Proclamation 3822, effective January 1, 1968) T.S.U.S.

4) Proclamation No. 3564 was issued subsequent to public hearings held before the Trade Information Committee in the Office of the Special Representative for Trade Negotiations. For the convenience of the court, attached is a copy of Presidential Proclamation 3564 and of Notice of Public Hearing Concerning Proposed Increases in Rates of Duty on Certain Articles, dated August 6, 1963, issued by the Trade Information Committee, Office of the Special Representative for Trade Negotiations, 28 F.R. 8066, which are public documents and may be judicially noticed.

5) The protest may be submitted for decision upon this stipulation. The claim is limited to that stated herein, and all other claims stated in the protest are hereby abandoned. . . .

Presidential Proclamation No. 3564, referred to in paragraph 4 of the stipulation, reads:

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

WHEREAS the European Economic Community maintains unreasonable import restrictions upon imports of poultry from the United States;

WHEREAS such unreasonable import restrictions directly and substantially burden United States commerce;

WHEREAS products of the European Economic Community receive benefits of trade agreement concessions made by the United States;

WHEREAS it is consistent with the purposes expressed in Section 102 of the Trade Expansion Act of 1962 (19 U.S.C. 1801) for the United States to suspend the application of the benefits of certain of those trade agreement concessions;

WHEREAS, having due regard for the international obligations of the United States, particularly paragraph 3 of Article XXVIII of the General Agreement on Tariffs and Trade* requiring any

---

*That agreement of October 30, 1947, has been proclaimed by Proclamation 2761A of December 16, 1947 (61 Stat. (pt. 2) 1103), which proclamation has been supplemented by subsequent proclamations.

suspension of trade agreement concessions to be made on a most-favored-nation basis, I am taking steps to suspend, on a most-favored-nation basis, certain trade agreement concessions in the United States schedules to that Agreement; and

WHEREAS rates of duty suspended by this proclamation will not be required or appropriate to carry out any trade agreement on and after January 7, 1964:

Now, THEREFORE, I, LYNDON B. JOHNSON, President of the United States of America, acting under the authority vested in me by the Constitution and statutes of the United States of America, including Section 252(c) of the Trade Expansion Act of 1962 (19 U.S.C. 1882(c)) and Section 350(a)(6) of the Tariff Act of 1930, as amended (19 U.S.C. 1351(a)(6)), and in order to suspend the application of the benefits of certain trade agreement concessions, do hereby proclaim (until such time as the President of the United States of America otherwise proclaims)—

(1) the termination of that part of any prior proclamation which proclaims rates of duty inconsistent with those provided for in the amendment made by paragraph (2) of this proclamation; and

(2) the amendment of the Tariff Schedules of the United States (28 F.R. 8599, as corrected, 28 F.R. 9131) by inserting under the heading "Subpart B" of Part 2 of the Appendix thereto the following:

| Item | Article | Rates of Duty | |
|------|---------|---------------|---|
| | | 1 | 2 |
| 945. 13 | Potato starch (provided for in item 132.50) | 2.5¢ per lb | No change |
| 945. 16 | Brandy, valued over $9.00 per gallon (provided for in items 168.20 and 168.22) | $5 per gal | No change |
| 945. 49 | Dextrine and soluble or chemically treated starches (provided for in item 493.30) | 3¢ per lb | No change |
| 945. 69 | Automobile trucks valued at $1,000 or more (provided for in item 692.05) | 25% ad val | No change |

The rates provided for in the amendment made by paragraph (2) of this proclamation shall be effective as to all articles entered, or withdrawn from warehouse, for consumption on and after January 7, 1964.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the Seal of the United States of America to be affixed.

DONE at the City of Washington this fourth day of December in the year of our Lord nineteen hundred and sixty-three, and of the Independence of the United States of America the one hundred and eighty-eighth.

[SEAL] LYNDON B. JOHNSON

By the President:
 DEAN RUSK,
 *Secretary of State*

And the Notice of Public Hearing referred to in said paragraph of the stipulation reads in relevant part:

OFFICE OF THE SPECIAL REPRESENTATIVE FOR TRADE NEGOTIATIONS

Trade Information Committee

[Docket No. 63–1]

PUBLIC HEARING CONCERNING PROPOSED INCREASES IN RATES OF DUTY ON CERTAIN ARTICLES

1. *Notice of public hearing.* Pursuant to its regulations, and in particular § 211.2(d) of Title 48 of the Code of Federal Regulations (28 F.R. 7947) the Trade Information Committee in the Office of the Special Representative for Trade Negotiations has ordered a public hearing with respect to proposed increases in rates of duty on articles to be selected from those listed in Annex A below.

2. *Subject matter of public hearing.* The purpose of the public hearing will be to receive information and views concerning the economic effects of an increase in the rate of duty on any article identified in Annex A below.

The purpose of such increases in rates of duty would be to redress the imbalance of tariff concessions between the United States and the European Economic Community arising out of the withdrawal of a German tariff concession on poultry which has been followed by the imposition by the European Economic Community of unreasonable import restrictions upon United States exports of frozen poultry. Such increases in rates of duty as are finally decided upon would be proclaimed by the President pursuant to section 252(c) of the Trade Expansion Act of 1962.

3. *Time and place of public hearing.* The public hearing will be held beginning at 10:00 a.m., e.d.s.t. on Wednesday, September 4, 1963, in the Hearing Room of the Tariff Commission, 8th and E Streets NW., Washington, D.C. (3d Floor, F Street side).

4. *Presentation of oral testimony.* A request to present oral testimony shall be submitted in writing to the Executive Secretary of the Committee on or before Wednesday, August 21, 1963, and in accordance with the applicable provisions of this notice

and the Committee's regulations (Part 211 of Title 43 of the Code of Federal Regulations (28 F.R. 7947)).

Any such request shall include the name, address, telephone number, and organization of the party submitting the request, a brief statement of the party's interest in the subject matter of the public hearing, a brief statement of the position to be taken, and the name of the person who will present oral testimony.

Each party submitting a request will be notified whether the request is granted, and if so, the date on which he is scheduled to appear and the amount of time allotted for his testimony, and, if not, the reasons for the denial.

5. *Submission of written briefs.* In order to ensure due consideration, written briefs shall be submitted as early as possible, and in no case later than Tuesday, September 3, 1963. Written briefs shall be prepared and submitted in accordance with the applicable provisions of this notice and the Committee's regulations (Part 211 of Title 43 of the Code of Federal Regulations (23 F.R. 7947)).

6. *Limitation on presentation of views.* Oral testimony and written briefs shall be limited to a consideration of the probable economic effects of an increase in a rate of duty on any article identified in Annex A of this notice. Consideration will not be given to oral testimony or written briefs dealing with any article not identified in Annex A.

All communications regarding this notice should be addressed to the Executive Secretary, Trade Information Committee, Executive Office Building, Washington, D.C. 20506.

BERNARD NORWOOD
*Chairman*

August 6, 1963.

It is to be noted here that Annex A referred to in the Notice of Public Hearing was not set forth in the stipulation. However, reference to 28 F.R. 8066 at page 8067 reveals that it contains a list of some 29 separate TSUS items that were under consideration by the President for rate increases as provided for in the Notice of Public Hearing. And, other than the omission of Annex A, we assume that paragraph 4 of the stipulation makes reference to and includes all of the proceedings conducted by or on behalf of the President leading to the issuance of Presidential Proclamation No. 3564, and that it was the intention of the parties to include all proceedings connected with this proclamation in the stipulation before the court.

With this assumption we turn to the applicable statutory provisions. 19 U.S.C.A., section 1882(c) (section 252(c), Trade Expansion Act of 1962) provides:

(c) Whenever a foreign country or instrumentality, the products of which receive benefits of trade agreement concessions made by the United States, maintains unreasonable import restrictions

which either directly or indirectly substantially burden United States commerce, the President may, to the extent that such action is consistent with the purposes of section 1801 of this title, and having due regard for the international obligations of the United States—

(1) suspend, withdraw, or prevent the application of benefits of trade agreement concessions to products of such country or instrumentality, or

(2) refrain from proclaiming benefits of trade agreement concessions to carry out a trade agreement with such country or instrumentality.

And 19 U.S.C.A., section 1882(d) (section 252(d), Trade Expansion Act of 1962) provides:

(d) The President shall provide an opportunity for the presentation of views concerning foreign import restrictions which are referred to in subsections (a), (b), and (c) of this section and are maintained against United States commerce. Upon request by any interested persons, the President shall, through the organization established pursuant to section 1872(a) of this title, provide for appropriate public hearings with respect to such restrictions after reasonable notice and provide for the issuance of regulations concerning the conduct of such hearings. Pub. L. 87–794, Title II, § 252, Oct. 11, 1962, 76 Stat. 879.

It is contended in substance by plaintiff in paragraph 3 of the stipulation that the President lacked authority in the proclamation to *terminate* prior trade agreement concessions under section 1882(c) because that statute only authorized him [under the facts of this case] to suspend, withdraw, or prevent the application of benefits of trade agreement concessions to products of countries comprising the European Economic Community bloc, and that his action under the proclamation was not otherwise authorized.

In *United States* v. *Star Industries, Inc.*, 59 CPA 159, C.A.D. 1060, decided June 22, 1972, involving importations of brandy from Spain, a non-European Economic Community contry, that had been classified in liquidation under TSUS item 945.16 per force of Presidential Proclamation No. 3564 as against the importer's entry of said brandy under TSUS item 168.20, the Court of Customs and Patent Appeals held that the President had not exceeded his authority under section 1882(c) when, in Proclamation No. 3564, he terminated prior trade agreement concessions on brandy under authority of the GATT in retaliation for import restrictions imposed on United States poultry exports to West Germany by the European Economic Community bloc. Our appeals court reasoned in C.A.D. 1060 that Article XXVIII(3) of the GATT, referred to in the proclamation, was required to be applied on a non-discriminatory, most-favored-nation basis, that the

78

President had determined that the application of section 1882(c) on a discriminatory basis would be inconsistent with our international obligations, and that the application of section 1882(c) on a non-discriminatory, most-favored-nation basis would not be inconsistent with the stated purposes of the Trade Expansion Act of 1962 as expressed in 19 U.S.C.A., section 1801. Our appeals court concluded:

> . . . the measures taken under the proclamation were sharply focused on the instrumentality which was maintaining the unreasonable import restrictions—the EEC. Thus the legislative intent to take strong measures against those who maintain unreasonable import restrictions was upheld, and at the same time we did not breach our international obligations.

Thus, the contentions of the plaintiff as set forth in paragraph 3 of the stipulation have been determined adverse to it by a decision of our appeals court rendered subsequent to the submission of the instant controversy. C.A.D. 1060 is binding on this court, and it follows that the protest herein must be, and hereby is, overruled.

Judgment will be entered herein accordingly.